UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| LISA LANDRY JOHNSON | * | CIVIL ACTION NO. 2:10-CV-1800 |
| LA. DOC. #332435 | * | |
| | * | SECTION P |
| V. | * | |
| | * | JUDGE TRIMBLE |
| WARDEN, LOUISIANA | * | |
| CORRECTIONAL INSTITUTION | * | MAGISTRATE JUDGE KAY |
| FOR WOMEN | * | |

## REPORT AND RECCOMENDATION

Before the court is an application for Writ of Habeas Corpus filed by petitioner Lisa Landry Johnson on December 3, 2010. Doc. 1. For the reasons set forth herein, this court recommends that the petition be **DENIED**.

### I.     Statement of the Case

Petitioner was convicted on one count of second degree murder pursuant to Louisiana Revised Statute 14:30.1 in the stabbing death of her husband, Jerry Johnson. Doc. 1, Att. 3, pp. 23-26. Prior to sentencing petitioner filed a Motion for Post Verdict Judgment of Acquittal which the trial court denied. Doc. 1, Att. 14, pp. 4-9. Petitioner was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. Doc. 20, Att. 16. The Third Circuit Court of Appeals affirmed the petitioner's conviction and sentence. *State v. Johnson*, 941 So.2d 696 (La. App. 3 Cir. 11/2/2006). The Louisiana Supreme Court denied her application for writs. *State v. Johnson*, 963 So.2d 995 (La. 9/14/2007).

Once the state court conviction became final, petitioner filed an application for post-conviction relief. The trial court denied petitioner's application on ground that the application was untimely. Doc. 20, Att. 16, p. 42. Petitioner then sought supervisory writs from the Third

Circuit Court of Appeals asserting that her original application for post-conviction relief was timely.  The Third Circuit granted writs, reversed the trial court, and remanded.  Doc. 20, Att. 16, p. 86-87.

On remand the trial court addressed the petitioner's eleven claims on the merits and denied both her post conviction relief application.  Doc. 20, Att. 17, p. 1.  Petitioner sought review with the Third Circuit Court of Appeals and the Louisiana Supreme Court.  Both courts denied petitioner's writ applications.  *See* Doc. 20, Att. 19, p.131; *State ex rel. Johnson v. State*, 50 So.3d 820 (La. 11/5/2010).

Having exhausted her remedies at the state level, petitioner seeks review in federal court.  The present habeas petition was filed on November, 30, 2011.  Doc. 20, Att. 1, p. 9.

## III.   Law and Analysis

Petitioner prays for *habeas* relief pursuant to 28 U.S.C. § 2254.  "[A] federal court's review of a claim adjudicated in a state court is deferential . . . ."  *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).  Pursuant to the federal *habeas* statute, as amended by AEDPA,[1] a federal court reviewing a *habeas* petition defers "to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'; or (2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009) (quoting 28 U.S.C. § 2254(d)).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different

---

[1] Petitioner filed his application for *habeas* relief after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA).  Thus, the provisions of that Act apply to petitioner's application.  *Summers v. Dretke*, 431 F.3d 861, 868 (5th Cir. 2005).

conclusion than the Supreme Court based on materially indistinguishable facts." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 404-08, 120 S. Ct. 1495, 1518-21, 146 L. Ed. 2d 389 (2000)).

A state court finding of fact is presumed correct and the petitioner must rebut the correctness by clear and convincing evidence. *Id.* (citing 28 U.S.C. § 2254(e)(1)). A state court application of clearly established federal law is unreasonable if it is "objectively unreasonable." *Id.* (citing *Williams*, 529 U.S. at 409; 120 S. Ct. at 1521, 146 L. Ed. 2d 389). That is to say, "[a]n application of federal law is unreasonable only 'when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect.'" *Trevino v. Johnson*, 168 F.3d 173, 181 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939, 167 L. Ed. 2d 836 (2007); *see Richards v. Quarterman,* 566 F.3d 553, 561 (5th Cir. 2009).

Petitioner's claims for relief in this proceeding stem from alleged irregularities in the state court proceeding, which irregularities are set forth in her own words as follows:

- "Petitioner's rights under the Fourteenth Amendment to the United States Constitution were violated when the court denied her request for the complete transcripts and the district attorney's file under the due process and equal protection clause."

- "Petitioner was denied her right to due process of law under the Fourteenth Amendment to the United States Constitution as there was insufficient evidence to support the guilty verdict beyond a reasonable doubt and the trial court erred in denying her motion for post-verdict judgment of acquittal."

- "The court erred in denying counsel's challenge for cause regarding prospective juror Dudley and in granting the State's challenge for cause regarding prospective juror Lily in violation of the Sixth and Fourteenth Amendments to the United States Constitution."

- "The State indicted petitioner with an illegally constituted grand jury and selected grand jury foreperson and a biased judge presided over her case which is a violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution."

- "The court violated petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights when the State struck prospective jurors based on their race without a prima facie case being established."

- "The State failed to reveal all the exculpatory material that should have been provided to the defense in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution."

- "Counsel's abandonment of a defense, failure to investigate, obtain witnesses, and the present evidence of Battered Woman's Syndrome constitutes ineffective assistance as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

- "The testimony of petitioner's alleged 'prior bad acts' was inadmissible as its conflicting substance were used to show motive and/or intent violated petitioner's due process to a fair trial which is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

- "Counsel's performance constitutes ineffective assistance as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

- "Petitioner was denied effective assistance of appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution."

- "The culmination of errors in this case renders petitioner's conviction unconstitutional."

Doc. 1, Att. 2, p. 9.  For the reasons discussed herein, the court finds that each claim for relief is without merit.

A.  <u>Trial Transcripts</u>:

Petitioner claims that her rights were violated when the state courts denied her request for the complete transcripts of the trial court proceedings and for the district attorney's file.  Doc. 1, Att. 2, pp. 16-21.  She identifies several parts of the trial that were not transcribed by the court reporter, including the following: (1) a videotape played at trial, (2) the jury charges, (3) the

-4-

jury's request for copies of the laws and explanations of certain jury instructions, and (4) certain bench conferences regarding the admissibility of prior bad acts evidence.  Doc. 1, Att. 2, pp. 16, 19.

Petitioner first suggests these defects with the trial transcript violate the Louisiana Constitution and several Louisiana revised statutes.  Doc. 1, Att. 2, p. 17.  This states no cognizable habeas relief as "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Next, petitioner suggests the gaps violate the Court Reporter Act, 28 U.S.C. § 753.  This Act, by its own terms, applies only to proceedings in federal district courts, not state court proceedings; thus, it can provide no relief here.

Lastly, petitioner claims these defects constitute violations of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.  In her argument petitioner fails to identify a particularized need for a transcript of these specific portions of the trial.  The Fifth Circuit has rejected the claim that the failure to provide a verbatim transcript automatically presents a federal constitutional infirmity.  *See Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980).

For these reasons the alleged defects with the transcript provide no relief as prayed for.

B.  Sufficiency of Evidence:

Petitioner asserts that she was denied due process as guaranteed by the Fourteenth Amendment as there was "insufficient evidence" to support the jury's verdict of guilty beyond a reasonable doubt.  Moreover, she claims that the trial court erred in denying her motion for post verdict acquittal.  Petitioner submits that she lacked the specific intent to kill or inflict great bodily harm required to sustain a second degree murder conviction under Louisiana law.  She

argues that her intoxication prevented her from developing an awareness of the situation such that she could fully comprehend that conduct would result in the death of the victim.  Doc. 1, Att. 2, p. 24.

A petitioner may be entitled to habeas corpus relief "if it is found that upon the record evidence adduced at the trial *no rational trier of fact* could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (emphasis added).  Because the petitioner was previously found guilty, the findings of the trial court are reviewed in the light most favorable to the prosecution.  *Id.* at 307.  Deference to the trier of fact is appropriate because the trier has undertaken the responsibility to "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.*

Because the appellate court adjudicated this claim on its merits, this court reviews that decision under the deferential standard of the previously discussed Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1).  *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).  Where the state court has reached the merits of a constitutional claim, a "writ of habeas corpus . . . shall not be granted with respect" to that claim "unless the adjudication of the claim" resulted in a decision that was contrary to clearly established federal law or unreasonably applied that law.  28 U.S.C. § 2254(d)(1).

When the Louisiana Third Circuit Court of Appeal considered this issue on direct appeal from the trial court, it noted the following:

> Testimony indicates that the [petitioner] stabbed [Mr. Johnson] twice after telling him that if he did not leave she would cut him and retrieving four knives from the kitchen.  We find that stabbing someone in the left chest near the heart is indicative of the specific intent to at least inflict great bodily harm, if not the specific intent to kill.  Accordingly, a rational trier of fact could have found that the State proved the elements of second degree murder beyond a reasonable doubt.

*State v. Johnson*, 941 So.2d 696, 702 (La. App. 3 Cir. 11/2/06).  Clearly the appellate court properly applied the standard enunciated in *Jackson*, *supra*.  Affording proper deference to that conclusion, we find no basis for granting habeas relief.

Petitioner also claims that the state district court should have granted post-conviction relief to the petitioner.  When considering petitioner's request for post-conviction relief, the state district court refused to grant relief on the grounds that it lacked the authority to so.  Louisiana law precluded it from reviewing issues already considered on direct appeal.  Doc. 20, Att. 17, p. 1 (citing La. Code Crim. Pro. art. 930.4(A)).  This challenge is not a basis for habeas relief because it alleges a violation of state law.  *Estelle*, 502 U.S. at 67-68.

Petitioner's request for habeas relief resulting from insufficiency of the evidence against her must be denied.

C.  <u>Juror Challenges</u>:

Petitioner alleges that the trial court erred in denying a challenge for cause as to jurors Wilder, Dally, and Dudley.  She contends that she was forced to use peremptory challenges to remove the contested jurors.  Petitioner also argues that the trial court erred when it granted the States challenge for cause as to juror Lilly, whom the court found would likely be biased.  Doc. 1, Att. 2, pp 24-26.

While the memorandum heading suggests that the trial court violated petitioner's Sixth and Fourteenth Amendment rights, petitioner argues in the body of her argument that the trial court failed to comply with the requirements of state procedure, particularly Louisiana Code of Civil Procedure article 797 regarding juror challenges.  Doc. 1, Att. 2, p. 25.  As discussed above, allegations of violations of state law, including procedure, are not a cognizable basis for federal habeas review.  *Estelle*, 502 U.S. at 67-68.

Even when considering petitioner's unargued constitutional points, we find no basis for relief for petitioner.  The Supreme Court has made clear that a defendant is not deprived of due process when she uses her peremptory challenges to remove jurors that should have been removed for cause.   *Ross v. Oklahoma*, 487 U.S. 81 (1988).   The *Ross* Court "reject[ed] the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury."  *Id.* at 88.  The ultimate question is whether "they jury that sits is impartial," not whether the defendant was forced to use a peremptory challenge, rather than one for cause, in the process. *Id.*

Petitioner's allegation that the trial court should not have granted the State's challenge for cause similarly fails.   Even assuming that the trial court committed error, "a trial court's erroneous venire rulings do not constitute reversible error 'so long as the jury that sits is impartial.'"  *Jones v. Dretke*, 375 F.3d 352 (5th Cir. 2004) (quoting *Ross*, 487 U.S. at 88).

Nothing in the record indicates the jury here was not impartial, and petitioner has not suggested otherwise.  We find no basis for habeas relief here.

D.  Grand Jury:

Petitioner alleges that she was indicted by "an illegally constituted grand jury, illegally selected grand jury foreperson, and a biased [presiding] judge" in violation of the petitioner's Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  In support of her claim petitioner quotes extensively from *State v. Langley*, 813 So. 2d 356 (La. 2002), wherein the Supreme Court quashed an indictment because the defendant was able to establish a prima facie case of discrimination in the selection of a grand jury foreperson.

In this case petitioner failed to file a pretrial motion to quash the grand jury indictment; accordingly, petitioner is procedurally barred under Louisiana law from raising the claim.  La.

Code Crim. Proc. art. 535(D); *Deloch v. Whitley*, 684 So.2d 349, 350 (La. 1996); *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997).  Absent any motion filed or hearing had, we have no record before us upon which we could rely to consider this claim.

 E. *Batson* Challenges:

  Petitioner alleges that the State unconstitutionally struck prospective jurors based on race. She argues that her counsel failed to raise the issue at trial, and she maintains that she has been unable to obtain the necessary documents to support her arguments because the State has failed to produce them.  Doc. 1, Att. 2, pp. 28-30.

  The Supreme Court in *Batson v. Kentucky* held that Equal Protection Clause of the Fourteenth Amendment "forbids the prosecutor to challenge potential jurors solely on account of their race . . . ."  476 U.S. 79, 83 (1986).  In order to preserve a right to review a *Batson* challenge, however, it is incumbent on a litigant to "lodge a contemporaneous objection" to the exclusion of the potential juror.  *Wilkerson v. Collins*, 950 F.2d 1054 (5th Cir. 1992).  As there was no contemporaneous objection made, we have no ability to consider petitioner's assertion that the State unconstitutionally struck jurors on the basis of race.

  As part of her *Batson* complaint petitioner also suggests her counsel was ineffective for his failure to raise this issue at trial.[2]  Petitioner brief did not allege ineffective assistance of counsel on direct appeal from her conviction, *see* Doc. 18, Att. 5, p. 6 (Third Circuit Court of Appeal), p. 67 (Supreme Court of Louisiana), and neither court addressed the issue.  *See* 941 So.2d 696 (La. App. 3 Cir. 11/2/2006); 963 So.2d 995 (La. 2007).  The *Batson* issue did not arise at all until petitioner's application for post-conviction relief with the state court, and even then there was no allegation that counsel was ineffective in failing to raise the *Batson* issue.  Doc. 18,

---

[2] Petitioner raises ineffective assistance of counsel as grounds for relief in other areas, and the substance of those claims are discussed in Section H, *infra.*

Att. 16, pp. 3, 24-25.  Petitioner's claim of ineffective assistance of counsel for failure to raise *Batson* issues was asserted for the first time in her application for supervisory writs on the denial of her application for post-conviction relief to the Louisiana Third Circuit Court of Appeal.  Doc. 18, Att. 17, p. 30 (first writ application), p. 96 (second writ application).

An application for a writ of habeas corpus "shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State[.]"  28 U.S.C. 2254(b)(1)(A).  This exhaustion doctrine requires a petitioner to present all federal claims to the state court before requesting federal habeas relief.  *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).  State court prisoners must afford "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The federal claims should be presented to state courts "in a procedurally proper manner according to the rules of the state courts."  *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

We conclude that petitioner failed to properly exhaust in state court her claim of ineffective assistance of counsel as it relates to the *Batson* issue.

Lastly, petitioner claims she was unable was unable to make a *Batson* showing because of the State's failure to disclose certain documents.  This issue was raised for the first time also in her application for supervisory writs on the denial of her application for post-conviction relief—the same time she initially raised ineffective assistance of counsel.  For the same reasons discussed above, this claim does not entitle petitioner to relief because she failed to exhaust the issue in state court.

Summarizing with respect to the *Batson* issues, we find ourselves unable to consider the substance of the claim because no contemporaneous objection was made.  Neither can we

consider petitioner's ineffective assistance of counsel claim or her complaint relating to non-production of documents as petitioner failed to exhaust remedies available in state court.

We cannot grant habeas relief on this basis.

F.   "Prior Bad Acts" Evidence:

Petitioner alleges that the state court erred by allowing the prosecution to call Michael Davis as a witness to alleged prior bad acts of the defendant.  Doc. 1, Att. 2, pp. 35-37.  She makes two arguments in support—(1) the evidence should have been deemed inadmissible per Louisiana Code of Evidence article 404(B); (2) the State withheld material regarding the witnesses' criminal history from the defendant that it should have disclosed per *Brady v. Maryland*, 373 U.S. 83 (1963).

The first argument is not a cognizable ground for relief on habeas review as a federal court is without power to review compliance with state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  The remaining alleged *Brady* violation will be addressed in the Section G, *infra*, wherein all issues of *Brady* compliance are discussed.

G.   Exculpatory Material:

Petitioner alleges that the prosecution failed to reveal certain exculpatory materials, resulting in violation of her rights under the Fifth, Sixth, and Fourteenth Amendments.  Doc. 1, Att. 2, pp. 30-32.

A State has an obligation to disclose evidence in its possession that has exculpatory value to a criminal defendant.  *Brady v. Maryland*, 373 U.S. 83 (1963).  The *Brady* court based the obligation of disclosure on a defendant's fundamental right to due process as guaranteed by the Fourteenth Amendment to the U.S. Constitution.  *Id.* at 86.  A *Brady* obligation may arise where: (1) undisclosed evidence demonstrates that the prosecution's case included perjured testimony

that the prosecution knew or should have known was perjured, (2) the prosecution fails to respond to a defense request for specific exculpatory evidence, and (3) the prosecution fails to disclose exculpatory evidence requested in a general manner or not requested at all.  *United States v. Augurs*, 427 U.S. 97, 103-107 (1976).

This issue was addressed by the state court in consideration of petitioner's application for post-conviction relief.  The state court summarily dismissed the claim, holding petitioner failed to "state any grounds upon which post-conviction relief [could] be granted" under Louisiana Code of Criminal Procedure article 930.3.  Doc. 20, Att. 17, p. 2.  This is clearly not correct as the first ground for relief under that article allows post-conviction remedies where "[t]he conviction was obtained in violation of the constitution of the United States . . . ."  La. C.Cr.P. art. 930.3(1); *see State v. Bright*, 2002-2793, pp. 10-11 (La. 2004), 875 So.2d 37, 44-45.  It is irrefutable that, where the State fails to turn over potentially exculpable material, and a defendant is thereafter convicted, that conviction is not valid under *Brady*.  As noted earlier, *Brady* requirements are grounded on petitioner's right to due process.  373 U.S. at 86.  A conviction in violation of *Brady*, then, is one "obtained in violation of the constitution of the United States" and indeed states a claim cognizable under Louisiana Code of Criminal Procedure article 930.3.  Thus, the court will conduct a *de novo* review of petitioner's claim that the State violated the mandate of *Brady*.

Petitioner alleges two broad *Brady* violations—the failure of the State to turn over statements made by certain prosecution witnesses, and the failure to disclose the prior criminal convictions of another state witness.  In order for petitioner to demonstrate a *Brady* claim on habeas review, she must prove "(1) the prosecution suppressed evidence, (2) the evidence was

favorable to the petitioner, and (3) the evidence was material."  *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996).

Petitioner alleges that the "State failed to turn over to the defense any and all statements of the witnesses, especially Sarah Landry Champ, Joshua Jerome Landry, and Eric Maurice Bledsoe, who all testified."  Doc. 1, Att. 2, p. 30.  After reviewing the record in its entirety, this court is satisfied that the prosecution turned over all statements made by these witnesses.  The court held a hearing without the jury present on the admissibility of certain videotaped testimony.  The prosecutor clearly states that all of the videotaped testimony was made available to defense counsel.  Doc. 18, Att. 10, p. 46 (Ms. Wilson: "And Mr. Bergeron was supplied a copy of everyone's statement that was videotaped that night.").  Moreover, the court noted that the recorded statements were disclosed to the defendant.  Doc. 18, Att. 10, pp. 76-77 ("The Defense did receive notice and had a copy of the video.").  Nothing in the record indicates any statements were made by these witnesses other than those on the videotapes.[3]  As there were only videotaped statements and as the prosecutor was not contradicted at trial that all videotapes were provided, we have little difficulty determining that defendant was indeed given access to all statements.[4]  Plaintiff has not carried her burden on this claim.

Petitioner also alleges that the prosecution failed to disclose information in its possession that witness Michael Davis had several prior convictions.  The trial record indicates that defense counsel objected when he discovered that prior convictions may exist.  Doc. 18, Att. 12, pp. 11-

---

[3] On several occasions the prosecutor used videotaped testimony as impeachment evidence.  Not once did defense counsel ever object to the prosecution's use of these videotapes claiming the tapes had not been made available to them.  *See* Doc. 18, Att. 11, pp. 111, 116, 117, 119, 122; Doc. 18, Att. 12, pp. 3-6.

[4] There are several instances where the defense counsel referred to alleged prior inconsistent statements made by the various witnesses.  For example, defense counsel first references a videotape of the interview during his cross-examination of prosecution witness Sarah Landry Champ.  Doc. 18, Att. 12, p. 2, lines 30-32.  Similarly, defense counsel references prior statements made by prosecution witness Eric Maurice Bledsoe to police officers on the night of the incident.  Doc. 18, Att. 11, p. 21.

12.  The prosecutor responded that it did not have any such information because it had not run a criminal history report on the witness.  Doc. 18, Att. 12, p. 12.  The record also reflects that the prosecutor subsequently reviewed her file and determined that she did not have a rap sheet of the witness.  Doc. 18, Att. 12, p. 32.  Defense counsel was afforded an opportunity to rectify the situation, if any such situation existed.  The trial judge found that the witness was still under subpoena and that defense counsel would be given an opportunity to recall the witness and re-examine him as to any prior criminal conduct.  Doc. 18, Att. 12, p. 12.

Petitioner presents no evidence here that such a criminal record existed.  Nothing in the record suggests that the prosecution was in possession of any such information, a condition precedent to its duty to disclose.  And in the event such a record did exist, petitioner had an opportunity at trial to present that into evidence and chose not to do so.

This claim by petitioner has no merit.

H.  <u>Assistance of Counsel</u>:

Petitioner's seventh, ninth, and tenth claims for relief are based upon allegations of ineffective assistance of counsel at various stages of this litigation.  She alleges that trial counsel was deficient in eight (8) respects, which are, agin in her own words, as follows:

1.  "Counsel was ineffective when petition plead not guilty.  Counsel should have withdrawn petitioner's plea and changed her plea to '*not guilty and not guilty by reason of insanity*', so the defense of '*Battered Woman's Syndrome*' could have been put forth."

2.  "Counsel failed to file a Motion to Quash the indictment against petitioner based on the discriminatory selection of the grand jury and its foreperson."

3.  "Counsel failed to investigate, interview prospective witnesses, and prepare a proper defense."

4.  "Counsel failed to investigate the fact and prove petitioner was intoxicated from alcohol and high on drugs at the time of the offense."

5.  "Counsel also failed to present witnesses who could have offered proof of Johnson's dangerous propensities, which further supported the '*Battery Woman's Syndrome*' defense."

6.  "Counsel failed to impeach and/or properly cross-examine the State's witnesses who gave inconsistent statements during their testimony."

7.  "Counsel failed to utilize expert witnesses to prove whether petitioner was competent to stand trial and whether she was insane at the time of the incident. Dr. James M. Anderson was retained on February 4, 2006, only five days prior to petitioner's trial.   Dr. Anderson did not have sufficient time to determine petitioner's competency but he did note that she was prescribed Paxil, Elavil, and Prozac."

8.  "Counsel refused to allow petitioner to testify on her own behalf."

Doc. 1, Att. 2, pp. 37-38.

The State asserts that this court should apply the AEDPA's deferential framework in accordance with 28 USC § 2254(d) because the state trial court already rejected that petitioner's ineffective assistance of counsel claim.  Doc. 20, Att. 1, p. 42.  This court lacks the authority to grant habeas relief "for claims subject to § 2254(d) unless it is shown that the earlier state court's decision" was either: (a) contrary to clearly established federal law or unreasonably applied that law, or (b) was based on an unreasonable determination of the facts presented.  *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d).  If the State is correct and § 2254(d) applies, then the question before this court is not whether the petitioner received ineffective assistance of counsel per *Strickland*, but whether the state trial court's application of the *Strickland* standard was unreasonable.  *Id.* at 785-86

This court finds that deference and latitude are not appropriate in this case insofar as the state court made no application of clearly established federal law.  The state trial court engaged in no discussion whatsoever of the constitutional standard for evaluating ineffective counsel claims. The entirety of the trial court's discussion appears as follows:

-15-

> After reviewing the record and transcripts of the trial proceedings against the petitioner, the Court is satisfied that defense counsel effectively represented her.  Further, a review of the appellate proceedings also indicates proper representation at that level. Therefore, petitioner's claim of ineffective assistance of counsel at both the trial and appellate level (sic) is without merit.

Doc. 20, Att. 17, p. 3.  These brief and conclusory statements by the trial court are not entitled to this court's deference on habeas review.  Thus, the court will conduct a *de novo* review of petitioner's claim of ineffective counsel.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Petitioner must demonstrate both: (1) his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) the deficiency so prejudiced the defendant that it deprived her of a fair trial or of a dependable verdict.  *Id.* at 687.  This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness.  *Id.* at 687-88.

The allegations of ineffective assistance of counsel can be grouped into five basic categories—general objections based on trial counsel's performance, trial counsel's failure to raise Battered Woman's Syndrome as a defense, trial counsel's failure to file a Motion to Quash the indictment, trial counsel's refusal to allow petitioner to testify, and appellate counsel's failure to assign error on direct appeal.  After reviewing the record in its entirety, this court is satisfied that the performance of counsel did not fall below an objective standard of reasonableness in any of these categories.

1.  <u>Objections to the General Performance of Trial Counsel</u>:

Petitioner makes several broad assertions of how her trial counsel was ineffective—failure to investigate, interview prospective witnesses, prepare a proper defense, impeach and/or cross-examine witnesses, etc.  Doc. 1, Att. 2, p. 37-38.  However, she fails to engage in any meaningful discussion of how counsel's conduct was deficient in each of these respects, much less describe how any deficiency may have prejudiced her at trial.

The Fifth Circuit has consistently "made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a habeas proceeding."  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).  Federal courts may not grant habeas relief on the ground that counsel was ineffective where there is an "absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [the] right to a fair trial . . . ."  *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).  We find no basis for habeas relief here.

2.  Trial Counsel's Failure to Raise Battered Women's Syndrome as a Defense:

Petitioner alleges that her counsel should have asserted a defense that the petitioner suffered from "Battered Woman's Syndrome."  She argues that counsel should have withdrawn her plea of not guilty and changed it to "not guilty and not guilty by reason of insanity."  Doc. 1, Att. 2, p. 37.  She also argues that counsel failed to present witnesses that could have offered proof of this defense.

This court is not in a position to second-guess trial counsel's strategy.  *See Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).  Counsel made a plea for a manslaughter verdict by demonstrating to the jury that the defendant lacked the requisite specific intent to commit second degree murder.

The trial testimony demonstrated that that the petitioner and victim had a rocky relationship and two witnesses, Joshua Landry and Michael Davis, were prepared to testify about two prior incidents wherein the petitioner cut her husband's arm on one occasion and stabbed him in the leg on another occasion. *See* Doc. 18, Att. 10.  The court ultimately excluded any discussion of the first incident.  Doc. 18, Att. 10, p. 76.

The court can only speculate that trial counsel feared that raising the defense of Battered Woman's Syndrome would open a Pandora's Box with respect to the petitioner's past.  In describing defense counsel's strategy, the prosecutor noted "they want their cake and they want to eat it too."  She was concerned that defense counsel's strategy was unfair *to the prosecution* because it sought to prove a history of domestic abuse while excluding any testimony about petitioner's alleged prior bad acts.  Doc. 18, Att. 10, p. 68.

In any event Petitioner provides no factual basis for a defense based on Battered Woman's Syndrome.  She does not identify a mental health professional who has diagnosed her with the syndrome, nor has she provided the names of an expert witness that would be willing to testify on her behalf.  Counsel's tactical decision were not "so ill chosen that it permeate[d] the entire trial with obvious unfairness" so as to afford petitioner relief.  *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).  We find no basis for habeas relief here.

3.   Trial Counsel's Failure to File a Motion to Quash the Indictment:

Petitioner argues that her trial counsel was constitutionally deficient because counsel failed to move to have the grand jury indictment quashed.  She alleges that the selection the grand jury and the foreperson was the result of discrimination.  Doc. 1, Att. 2, p. 37.  This claim does not entitle petitioner to relief because it does not satisfy either *Strickland* prong.

-18-

Petitioner fails to demonstrate that counsel knew or should have known of a pattern of discrimination in the grand jury selection process.  Even if counsel was deficient in failing to file a motion to quash, petitioner still cannot demonstrate that she was prejudiced as a result.  She fails to put forward any evidence that either the grand jury or its foreperson were discriminatorily selected such that there would be a reasonable likelihood that she would have been successful in having the indictment quashed.

Petitioner points to *State v. Langley*, 813 So. 2d 356 (La. 2002), wherein the Supreme Court of Louisiana quashed an indictment because the defendant established a prima facie case of discrimination in the selection of a grand jury foreperson.  However, the State is quick to highlight that this is an entirely different grand jury than in *Langley*.  Doc. 20, Att. 1, p. 36. Petitioner cannot piggy-back off the *Langley* decision to demonstrate a prima facie case of discrimination in the grand jury selection process in this instant case, and as a result, she fails to demonstrate that counsel's failure to file a motion to quash prejudiced the outcome of her trial. We find no basis for habeas relief here.

### 4.   Trial Counsel's Refusal to Allow Petitioner to Testify:

Petitioner alleges that her trial counsel refused to permit her to testify on her own behalf and this constitutes ineffective assistance of counsel.  Doc. 1, Att. 2, p. 38, 39.

A criminal defendant has a constitutional right to testify on her own behalf, and "where the defendant contends that his counsel interfered with his right," a court evaluates that claim under the *Strickland* standard.  *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).  The decision not to call the defendant to testify is part of the overall trial strategy which enjoys a heavy presumption that petitioner must overcome.  *Id.* at 635.  This court must avoid

condemning such strategic decisions with the benefit of hindsight.  *Robinson v. Johnson*, 151 F.3d 256, 261 (5th Cir. 1998).

Petitioner cannot satisfy the first requirement of *Strickland* as she offers no proof that counsel forbade her from taking the stand in her own defense.  She fails to relay any factual basis supporting her allegation that she was specifically denied the privilege.  In any event, this court concludes that even if counsel deprived petitioner of her right, she did not suffer prejudice under the second prong of *Strickland*.

The trial record indicates that petitioner gave several different accounts of the sequence of events; the statement she made to the responding officers was completely different than the statement she made to the investigating detectives.  *See* Doc. 18, Att. 9, pp. 25-27 (closing arguments).  Officer John Thacker was the first law enforcement officer to arrive on the scene. He testified that petitioner stated the following:

> "I'll tell you what happened. . . .  He hit me with a drink. We continued arguing.  When we got home I told him to leave.  He said he wasn't leaving.  I grabbed some knives, told him to get out."  She said, "He stood up and said, 'Do what you got to do; I'm not leaving,' and I stabbed his ass."

Doc. 20, Att. 10, p. 14.  Petitioner relayed essentially the same story to Officer James Wilson. Doc. 20, Att. 10, p. 21.  Her story changed, however, when she interviewed with detectives and relayed the following:

> "I was standing in the corner of the kitchen and that man, he just came charging at me.  And I don't know what was wrong with him but he came charging at me and I couldn't – then he hit me.  He had some kind of weapon in his hand and he hit me, and he hit me. And – and then the knife was there and I grabbed it and it was wet but I wasn't bleeding it was kind of like blood but I wasn't bleeding.  And I just turned around because I had to get him off of me.  And, you know, but I would – I don't murder nobody."

Doc. 20, Att. 9, p. 26.

This court refuses to second guess the strategic decisions made by trial counsel.  Counsel could well have conclude (and in all likelihood did conclude) that petitioner would do herself more harm than good by taking the stand given the various inconsistent statements made to authorities.  *See e.g. Hollenbeck v. Estelle*, 672 F.2d 451 (5th Cir. 1982); *United States v. Garcia*, 762 F.2d 1222 (5th Cir. 1985).  We find no basis for habeas relief here.

5.   Appellate Counsel's Failure to Assign Error on Direct Appeal:

Petitioner also alleges that her appellate counsel was ineffective and this constitutes deprivation of the right to counsel.  Doc. 1, Att. 2, pp. 39-40.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  Whether appellate counsel was ineffective is determined by the same standard articulated in *Strickland*.  Petitioner must show a reasonable probability that but for appellate counsel's deficient representation, she would have prevailed on her appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Petitioner's claims are without merit insofar as she fails to identify any assignments of error that appellate counsel should have argued on direct appeal.  Her assertion that counsel failed to raise issues on direct appeal is overly broad and vague such that this court could conclude that appellate counsel's performance was deficient and prejudicial under the *Strickland* standard.

We find no basis for habeas relief here.

I.   "Culmination of Errors":

Petitioner asserts in her final claim that "[t]he culmination of errors in this case renders petitioner's conviction unconstitutional."  Doc. 1, Att. 2, p. 9.  However, since this court finds no constitutional errors present in this case, there is no merit to this claim.

**IV.     Conclusion:**

For the reasons discussed herein, the undersigned recommends that petitioner's application for Writ of Habeas Corpus be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429-30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 28th day of September, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

-22-